LEWIS RALSTON, claimant, plaintiff in error, *vs.* JOHN D. FIELD, plaintiff in *fi. fa.*, defendant in error.

1. Where the titles to land vests in the defendants in *fi. fa.*, subsequent to the date of the judgment from which the *fi. fa.* issued, the lands are subject to the lien of such judgment.
2. Certain lands were levied on as the property of K., to which C. interposed a claim. Pending the claim the lands were sold at sheriff's sale as the property of C., and R. became the purchaser. The claim of C. was withdrawn, and R. interposed his claim: *Held*, that R. having purchased the land pending a levy and claim, was chargeable with notice of any fraud that may have characterized the transfer of the lands from K. to C., the claim to which was then pending.
3. It is no error for the Court to refuse a charge to the jury, founded upon an assumption that the evidence does not justify.
4. A levy will not be dismissed on account of the time that has elapsed, unless upon motion in the nature of a rule *nisi*, calling upon the party to show cause why he does not proceed.
5. Under the Act of 1821, a deed is presumed to convey a fee simple, unless the contrary appears by proof.

6. Where a defendant in *fi. fa.* has a bond for titles to land, and has paid the purchase money, the land is subject to the lien of judgments against him.

*Fi. fa.* and claim, in Lumpkin Superior Court. Tried before Judge RICE, at the July Term, 1860.

The questions presented for adjudication by the record in this case, arise out of the state of facts following, to-wit:

On the 9th day of July, 1836, James Cantrell recovered two judgments in the Justice's Court of the 837th militia district of Lumpkin county, against Samuel King, and on the 11th day of June, 1836, John Hills also recovered two judgments in the same Court, against said King.

From these judgments, executions were regularly issued, and on the 6th of June, 1837, Hills transferred and assigned his two *fi. fas.* to John D. Field, and on the 19th of June, 1837, Cantrell also assigned his two *fi. fas.* to said Field. On the 18th day of July, 1839, these *fi. fas.* were levied upon lots of lands Nos. 1055 and 1080, in the 12th district of the 1st section of said county of Lumpkin, as the property of Samuel King, the defendant, a return, that no personal property could be found to satisfy the *fi. fas.,* having been previously made.

In 1842, Miller, Chamberlain & Co., and Tully Choice interposed claims to the land, which were withdrawn. Afterwards, in October, 1843, Tully Choice filed a claim to one of the lots, and in November, 1843, Miller, Chamberlain & Co., interposed a claim to the other lot. These claims continued in Court until 1851, when they were withdrawn. On the 17th of April, 1851, Lewis Ralston interposed his claim to both lots. These claims were all pending, in succession and continuously, from the time the first one was filed until the case was tried.

On the trial the plaintiff introduced the *fi. fas.* with the levies thereon, and proved that Samuel King, the defendant in *fi. fas.,* was in possession of the land levied on, from 1535 to 1840, and that he showed to his overseer, Reuben Moss, a deed to one of the lots, in the year 1836 or 1837, and then rested his case.

Ralston *vs.* Field.

Counsel for claimant then moved to dismiss the levy, on the ground that the same had lapsed, but the Court overruled the motion, and claimant excepted.

Claimant then introduced in evidence a grant from the State to Lewis Metts for one of the lots, (1055,) and a deed from Metts to Tully Choice, dated 22d April, 1840, and recorded 3d September, 1840. Also, a grant from the State to John P. Riley for the other lot, (1080,) and a deed from John P. Riley to Tully Choice, dated 24th of April, 1840, and recorded 19th July, 1851.

Claimant then proved the existence and loss of a *fi. fa.* from Lumpkin Superior Court, in favor of Daniel Davis, against Tully Choice, maker, and Jediah Blackwell, endorser, and introduced a deed from James Kennedy, sheriff, to Lewis Ralston, the claimant, reciting a sale of the land as the property of Tully Choice, under the lost *fi. fa.*, to claimant, the highest bidder, on the first Tuesday in March, 1845. The deed was recorded 27th March, 1845.

Claimant then rested his case.

Plaintiff in rebuttal made oath, that he had made search for a deed from Lewis Metts to Samuel King, the defendant in *fi. fa.*, for lot No. 1055; that he had been in the neighborhood of Mett's former residence, in Sumter county, and was informed by the former neighbors of Metts, that he had removed to the State of Alabama; that he also called on John P. Riley, in his inquiry and search for a deed from said Riley to said King, for lot No. 1080, and Riley said that he had no such deed, and knew nothing of it. The plaintiff also stated, that he did not know where said deeds were.

Plaintiff then proved by William M. Varnum, that in the Spring of 1837 or 1838, Samuel King employed him to take a bond he held on Lewis Metts, of Sumter county, and one he held on John P. Riley, and pay to Metts a balance due on the purchase and take a deed from Metts to King for lot No. 1055, and a deed from Riley to King for lot No. 1080, all of which, as King's agent, he did, and returned to Lumpkin county and delivered the deeds to King; that

he thought he witnessed the deeds, but is not certain, and that King was in possession of the land from about 1836 to 1840, when he left Georgia; that in the Spring of 1840, Tully Choice employed him to take these deeds to King back to Metts and Riley, and get them to substitute for them a deed directly to said Choice, which was done; that the witness had no interest whatever in the land, and acted in the one case as agent of King, and in the other as agent of Choice.

Counsel for claimant objected to this testimony of Varnum, so far as the same went to prove the contents of the deeds from Metts and Riley to King, on the ground that there was no sufficient proof of their execution, and that plaintiff had not laid a sufficient foundation for the introduction of secondary evidence.

The Court overruled the objection, and the claimant excepted.

Amongst other things, the presiding Judge charged the jury, "that if Metts and Riley executed deeds to King for the land in controversy, and if, after the lands were levied on, as the property of King, Tully Choice returned those deeds to Metts and Riley, and procured them to execute the deeds to Choice, now in evidence before them, then it would be their duty to find the lands subject, and the fact that any portion of the deeds introduced by claimant had been recorded within twelve months from the date of their execution, would not change the rights of the parties, or their finding in this case."

To this charge claimant excepted, and requested the Court to charge the jury "that if Varnum was interested in the purchase of the land by King, or was a partner with him in the purchase, he was incompetent to attest the deeds," which charge the court declined to give, and claimant excepted.

The jury found the property subject to the executions, and the claimant seeks a reversal of that judgment on the grounds of exception set forth in this statement.

Irwin & Lester and Wm. Martin, for plaintiff in error.

James R. Brown, *contra*.

*By the Court.*—LUMPKIN, J., delivering the opinion.

1. If Varnum is to be believed, this is a plain case. It seems that in the Spring of 1837 or 1838, he was employed by Samuel King to take the bonds for titles which he held on Metts and Riley, whether as vendee or transferee, witness does not recollect, and it is immaterial, for lots No. 1055 and 1080, pay the balance of the purchase money, and take deeds to King, which he did. Here, then, is the title vested in King subsequent to the Justice's Court *fi. fas.* which Field bought of Hills & Cantrell. That in 1840 he was employed by Tully Choice to take these same two deeds to the grantees, (how Tully Choice came by them does not appear,) and have them exchanged for deeds to Choice; and this also Varnum did—of course the two lots of land are subject to the lien of Field's executions.

2. The levies were pending on these *fi. fas* from 1843 to 1851. Lewis Ralston, one of the claimants, bought in 1845, and of course is chargeable with notice of the fraud in the transfer of these lands from Samuel King to Tully Choice, the claim to which was then pending.

3. There is no evidence that William M. Varnum was a partner of King, or interested in the lands. The Court was right in refusing to give a charge founded upon such assumption, there being no evidence to justify it. Indeed the evidence seems rather to negative this hypothesis, for he seems really to have acted as the agent of Tully Choice in securing an exchange of the title papers in his favor.

4. As to the Court refusing to dismiss the levy on account of the time which had elapsed, it is sufficient to reply, that no motion was made by the claimant for that purpose, and a cause is never dismissed without motion, in the nature of a rule *nisi,* calling on the opposite party to show cause why he does not proceed.

5. It is objected that Varnum does not prove the contents of the deeds. He states that they were deeds to lots of land No. 1055 and 1080, and under the Act of 1821, they are presumed to convey a fee simple, unless a less estate was

limited in the deed, and this proof was for the claimant to make.   We think the originals were sufficiently accounted for.

6. But suppose no deeds were taken; what of that? Varnum swears that he paid the balance of the purchase money to Metts and Riley for King, and this makes the land subject to the judgments against King.

Let the judgment be affirmed.